IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMAR L. TRAVILLION, | No. 4:23-CV-01335 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| LAUREL HARRY, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

DECEMBER 20, 2023

Plaintiff Jamar L. Travillion is a serial *pro se* litigant who is well known to this Court. He recently filed another Section 1983[1] lawsuit regarding aspects of his incarceration at the State Correctional Institution, Rockview (SCI Rockview), in Bellefonte, Pennsylvania. Travillion's *pro se* civil rights action appears to assert two types of constitutional tort claims against numerous SCI Rockview and Pennsylvania Department of Corrections (DOC) officials. Because Travillion largely fails to state a claim upon which relief may be granted, the Court will dismiss the bulk of his complaint pursuant to 28 U.S.C. § 1915A(b)(1) but will grant leave to amend.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

I.  **STANDARDS OF REVIEW**

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[2]  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[3]  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[4]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[5]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[6]  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to

---

[2] *See* 28 U.S.C. § 1915A(a).
[3] *Id.* § 1915A(b)(1).
[4] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
[5] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[6] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[7]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[8] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[9] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[10] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[11] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12]

Because Travillion proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[13] This is particularly true when the *pro se* litigant, like Travillion, is incarcerated.[14]

---

[7] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[8] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[9] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[10] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[11] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[12] *Iqbal*, 556 U.S. at 681.
[13] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[14] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## II. DISCUSSION

Travillion's complaint, like his other civil rights complaints, is difficult to parse. That is because he attempts to use a "kitchen-sink" or "shotgun" style pleading approach, continually repeating conclusory and formulaic language, failing to delineate between defendants and claims, and cursorily alleging that certain conduct was motivated by multiple nefarious purposes.

In the instant case, Travillion alleges a campaign of purported retaliation by SCI Rockview officials. He first claims that in August and September of 2021, defendants Bobbi Jo Salamon, Tim Miller, and Sharon Clark assigned him to a double cell "knowing of a substantial risk of serious harm to [Travillion's] safety" and with the intent to cause him injury in retaliation for filing a previous lawsuit—*Travillion v. Wetzel*, No. 14-cv-1159 (M.D. Pa.)—and several grievances.[15] Travillion does not describe any Defendant's specific conduct, nor does he explicitly plead the allegedly dangerous situation into which he was placed. From adjacent allegations, it appears that he is asserting that he was double celled with an inmate (Matthew Sauter) who sexually assaulted him in late September 2021.[16]

Travillion additionally alleges that in September 2021, defendants Heather Haldeman, Craig Miller, Howard Hoover, Eric Makosy, Sharon Damico, FNU Davis, and FNU Richard "discarded" his complaints of sexual harassment and

---

[15] Doc. 1 ¶¶ 23-27.
[16] *See id.* ¶ 28.

4

assault by Sauter to retaliate against him for filing *Travillion v. Wetzel* and several grievances.[17]

Travillion next claims that defendant FNU Rook filed a false misconduct against him in retaliation for filing *Travillion v. Wetzel* and several grievances, as well as for lodging a verbal PREA complaint regarding the sexual assault by Sauter.[18] He also avers that, in October 2021, defendant Justin Sherman "threatened and harassed" him in order to obstruct an investigation into a grievance in retaliation for filing *Travillion v. Wetzel* and six different grievances.[19] Travillion additionally alleges that, in November 2021, defendant FNU Butler "destroyed PREA investigation documents and created false reports" to interfere with a grievance investigation in retaliation for filing *Travillion v. Wetzel* and five different grievances.[20] Finally, Travillion contends that Salamon, Clark, T. Miller, C. Miller, Makosy, and Damico "falsified" various DOC records and documents in retaliation for filing *Travillion v. Wetzel* and six different grievances.[21]

Travillion asserts Section 1983 claims for retaliation under the First Amendment and failure to protect under the Eighth Amendment.[22] His complaint

---

[17] *Id.* ¶ 28.
[18] *Id.* ¶ 29.
[19] *Id.* ¶ 30.
[20] *Id.* ¶ 31.
[21] *Id.* ¶¶ 32-33.
[22] *Id.* ¶¶ 34, 35. Although Travillion labels his Eighth Amendment claim as "Deliberate Indifference & Failure to Protect," those claims are one and the same. Travillion's allegations plainly implicate a single type of Eighth Amendment claim—failure to protect from another inmate's assault—which includes a deliberate indifference element.

is riddled with significant pleading deficiencies. The Court will address these deficiencies in turn.

### A.     First Amendment Retaliation

To state a First Amendment retaliation claim, a prisoner must allege that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the inmate's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[23]

Travillion's retaliation claims primarily falter at the third element—causation. He alleges, in purely conclusory fashion, that 13 different SCI Rockview officials retaliated against him based on his filing of *Travillion v. Wetzel* and unspecified grievances.[24]

The problem, however, is that *Travillion v. Wetzel* was filed in 2014, almost a decade before the alleged incidents in this case, and that lawsuit targeted entirely different prison officials except Sharon Clark.[25] Travillion has proffered no

---

[23] *Wisniewski*, 857 F.3d at 156 (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).
[24] Although Travillion provides grievance numbers, he does not state the substance of those grievances or against whom they were filed.
[25] *See generally Travillion v. Wetzel*, No. 14-cv-1159 (M.D. Pa.). It is possible that defendant Lieutenant Justin Sherman was named as a defendant in *Travillion v. Wetzel*, although it is unclear from the documents in that case. Even if it is the same defendant, the allegations against Sherman in the instant case do not plausibly state an actionable adverse action for a First Amendment retaliation claim. *See infra* p. 8.

allegations or facts that would establish knowledge of this protected conduct by most Defendants, much less a reason why this 2014 lawsuit would motivate those Defendants to take adverse actions against him.

Similarly, Travillion avers, again in conclusory fashion, that numerous Defendants retaliated against him because he filed prison grievances. But courts in this district have consistently rejected retaliation claims against one defendant based on a grievance filed against a different defendant or nonparty prison official,[26] as such conclusory allegations do not demonstrate knowledge of the protected conduct or suffice to show causation. Travillion identifies his grievances by number, but he provides no factual details regarding the substance of these grievances or against whom they were filed. His complaint, therefore, fails to plausibly plead causation with respect to most Defendants.

The Court further observes that many of Travillion's retaliation claims fail to state an adverse action. For example, in paragraph 28, he alleges that several Defendants "discarded" his complaints of Sauter's assault in retaliation for his 2014 lawsuit and several grievances.[27] But simply discarding or ignoring a

---

[26] *See, e.g.*, *Kendrick v. Hann*, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); *Murray v. Smithbower*, No. 1:17-cv-0127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021); *Horan v. Collins*, No. 1:13-cv-00140, 2016 WL 5030468, at *6 (M.D. Pa. Aug. 8, 2016); *Victor v. Lawler*, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); *Royster v. Beard*, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), *aff'd* 308 F. App'x 576 (3d Cir. 2009) (nonprecedential) (agreeing with district court analysis).

[27] Doc. 1 ¶ 28.

prisoner's complaint, without more, is not sufficient to deter a person of ordinary firmness from exercising his or her First Amendment rights. In paragraph 30, Travillion asserts that Sherman "threatened and harassed" him in order to obstruct the resolution of a grievance, but mere verbal threats and harassment alone generally do not constitute actionable adverse actions.[28] Additionally, Travillion claims that several Defendants "falsified" DOC documents,[29] but he does not provide any explanation or details as to why such actions would deter an ordinary person from exercising his or her First Amendment rights.

In sum, the only Defendant against which Travillion has plausibly alleged a First Amendment retaliation claim is Clark. All other retaliation claims must be dismissed pursuant to 28 U.S.C. § 1915(b)(1) for failure to state a claim upon which relief may be granted.

---

[28] *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (nonprecedential) (finding that "verbal threats and few gestures of racial harassment" plaintiff experienced were "not sufficiently adverse to support a retaliation claim" under the facts of that case); *Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) (nonprecedential) (noting that "threats alone do not constitute retaliation") (citing *Maclean v. Secor*, 876 F. Supp. 695, 699 (E.D. Pa. 1995) (collecting cases)); *Snider v. Alvarez*, No. 18-cv-801, 2020 WL 6395499, at *17 & n.166 (M.D. Pa. Nov. 2, 2022) (collecting cases); *Cooper v. Sherman*, No. 17-cv-2064, 2019 WL 2408973, at *7 (M.D. Pa. June 7, 2019) ("It is well settled, however, that verbal threats or verbal harassment . . . do not constitute adverse action for purposes of establishing a First Amendment retaliation claim."); *Bartelli v. Lewis*, No. 04-cv-908, 2005 WL 2406048, at *2 (M.D. Pa. Sept. 29, 2005) ("[V]erbal threats do not constitute an 'adverse action' and, therefore, do not fulfill a requisite element of a retaliation claim[.]"); *see also Naranjo v. Walter*, No. 22-3435, 2023 WL 5928506, at *3 (3d Cir. 2023) (nonprecedential) (finding that threat to issue misconduct if inmate filed unfounded sexual abuse claim was insufficient to establish an adverse action for retaliation claim); *Chruby v. Kowaleski*, 534 F. App'x 156, 161 (3d Cir. 2013) (nonprecedential) (finding that verbal threat to issue misconduct did not sufficiently state an adverse action for retaliation claim).

[29] Doc. 1 ¶¶ 32, 33.

B.  **Eighth Amendment Failure to Protect**

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."[30]  Prison officials, therefore, have "a duty to protect prisoners from violence at the hands of other prisoners."[31]  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."[32]

To plead an Eighth Amendment failure-to-protect claim against a prison official, the inmate must plausibly allege that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm."[33]  In this context, deliberate indifference is a subjective standard; that is, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."[34]  Actual knowledge or awareness of a substantial risk to an inmate's safety can be proven "in the usual ways, including inference from circumstantial evidence."[35]

---

[30] *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).
[31] *Id.* (alteration in original) (quoting *Farmer*, 511 U.S. at 833).
[32] *Farmer*, 511 U.S. at 834.
[33] *Bistrian*, 696 F.3d at 367.
[34] *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).
[35] *Id.* (quoting *Farmer*, 511 U.S. at 842).

Travillion's failure-to-protect claim is challenging to follow. He alleges that Salamon, T. Miller, and Clark (without properly specifying their individual involvement) collectively "classified" him to a double cell assignment on August 4, August 13, September 9, September 20, and September 21, 2021, "knowing of a substantial risk of serious harm to his safety[.]"[36] He claims that these cell assignments put him in danger, but he does not provide any facts to support this bald assertion. For instance, Travillion does not provide any details as to whom he was celled with on these dates, why each particular date and double-cell assignment put him in danger, or if he was being assigned to different cells with different cellmates or the same cell and cellmate. It appears that, at some point in late September 2021, Travillion allegedly was sexually assaulted by his cellmate, Sauter.[37] But even this allegation is not specifically pled. Rather, Travillion alleges in this paragraph that he complained of an assault by Sauter and those complaints were ignored.[38]

Thus, the primary problem with Travillion's Eighth Amendment claim is that he has failed to plausibly allege deliberate indifference by any Defendant. He has likewise failed to plausibly allege that Defendants' deliberate indifference caused his harm. He has proffered no facts indicating that any Defendant knew his

---

[36] Doc. 1 ¶¶ 23-27.
[37] *See id.* ¶ 28.
[38] *See id.*

cell assignment presented a risk of substantial harm to his safety and ignored that risk, or that this indifference caused the sexual assault. Travillion uses cut-and-paste style accusations containing conclusory language (*i.e.*, that Defendants knew "of a substantial risk of serious harm to his safety"), but such legal conclusions are not entitled to the assumption of truth and instead must be disregarded.

Additionally, because Travillion fails to allege any details regarding his harm (*i.e.*, when he was allegedly assaulted, if there were multiple incidents, if he was moved to a different cell after the assault, *etc.*), his attempts to state Eighth Amendment claims against Defendants not involved in his cell assignments likewise fall short. Travillion purports to assert a failure-to-protect claim against Haldeman, C. Miller, Hoover, Makosy, Damico, Davis, Richard, Rook, Sherman, and Butler,[39] but he has utterly failed to do so because he has not alleged how these Defendants had any involvement in his cell assignments or how their actions—which appear to have occurred after the September 2021 assault—otherwise put him in danger or caused him harm.

Thus, as to Salamon, T. Miller, and Clark, Travillion has failed to plausibly plead the second and third elements of an Eighth Amendment failure-to-protect claim. As to Haldeman, C. Miller, Hoover, Makosy, Damico, Davis, Richard,

---

[39] *See* Doc. 1 ¶ 35.

Rook, Sherman, and Butler, Travillion has failed to plausibly allege all three elements. The Eighth Amendment claims, therefore, must be dismissed.

### C. Custom or Policy

Travillion also attempts to assert a claim regarding an unconstitutional policy or custom against defendant Laurel Harry—Secretary of the DOC—and against the DOC itself. He has not done so.

To bring a Section 1983 claim against a municipality, a plaintiff must show that "the alleged constitutional transgression implements or executes a policy, regulation[,] or decision officially adopted by the governing body or informally adopted by custom."[40] In other words, a plaintiff can establish Section 1983 municipal liability in two ways: policy or custom.[41] The Third Circuit has explained that, to prove liability, the plaintiff must establish that the municipal policy or custom was itself unconstitutional, or was the "moving force" behind the constitutional deprivation.[42]

Travillion vaguely claims that "Harry and other current and former Department policy makers have tacitly approved and established a well settled [sic] and wide spread [sic] custom and practice of Department personnel weaponizing and otherwise misusing or abusing their discretion under" DOC Policy Statement

---

[40] *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citation omitted).
[41] *Watson v. Abington Township*, 478 F.3d 144, 155 (3d Cir. 2007); *Santiago v. Warminster Township*, 629 F.3d 121, 135 (3d Cir. 2010).
[42] *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted).

12

11.2.1 to "physically, sexually, mentally and emotionally injure" prisoners.[43] Travillion provides no facts or support concerning this threadbare allegation against Harry. He does not explain Harry's personal involvement or plead facts showing deliberate indifference by Harry to his constitutional rights,[44] nor does he plausibly allege how Harry was a final policymaker with respect to a "custom and practice" at SCI Rockview that caused him constitutional injury.

Travillion must do more than simply assert that, as Secretary of the DOC, Harry "tacitly approved and established" an unconstitutional custom that he alleges was in effect for over ten years.[45] Otherwise, the Secretary of the Department of Corrections would be liable for *every* unwritten practice or custom existing at the dozens of correctional institutions across the state, regardless of whether the Secretary had any knowledge of such customs or played any role in promulgating them. That type of *respondeat superior* liability is expressly proscribed in Section 1983 litigation.[46]

If Travillion is attempting to assert that Policy Statement 11.2.1 is constitutionally infirm, he has not come close to stating such a claim. He does not explain how providing "'sufficient flexibility' to Department personnel in their

---

[43] Doc. 1 ¶ 20.
[44] *See Thomas*, 749 F.3d at 222, 223 (noting that, for Section 1983 liability, municipality's policy (or lack thereof) must amount to deliberate indifference to plaintiff's constitutional rights).
[45] *See* Doc. 1 ¶ 21.
[46] *See Dooley*, 957 F.3d at 374.

13

interpretation of the policy 'to be consistent with the law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections'"[47] would violate the constitution. Moreover, claiming that prison officials "misuse" or "abuse" their discretion under this policy[48] does not undermine the constitutionality of the policy itself; it merely alleges that prison officials were acting improperly.

### D. Official Capacity Claims

Travillion purports to sue Defendants in their individual and official capacities.[49] However, as Travillion is well aware due to his extensive history of *pro se* civil rights litigation, the Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[50] This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[51] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under

---

[47] *Id.* ¶ 19.
[48] *Id.* ¶ 20.
[49] *See id.* at p. 1 (caption).
[50] U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).
[51] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Section 1983.[52]  There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for prospective injunctive and declaratory relief."[53]

Thus, to the extent that Travillion is seeking monetary damages from Defendants in their official capacities, those claims must be dismissed for failure to state a claim.  Travillion additionally asserts, without any development or elaboration, that he is seeking "injunctive relief."[54]  He does not explain what injunctive relief he is seeking or which Defendant(s) he is seeking to enjoin.  His complaint, therefore, fails to contain a request for prospective injunctive relief, so there is no basis for his official capacity claims against any Defendant.

### E.   Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[55]  Travillion will be granted leave to amend in the event that he can plead facts that would plausibly state a claim for relief.

---

[52] *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

[53] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

[54] Doc. 1 ¶ 37.

[55] *Grayson*, 293 F.3d at 114.

If Travillion chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings.  The amended complaint should set forth his claims in short, concise, and plain statements, and in sequentially numbered paragraphs, and must cure the deficiencies identified herein.

Travillion must name appropriate defendants and specify the offending action(s) taken by a particular defendant.  This step is critical for Travillion, as his complaint often fails to delineate between the actions of numerous different defendants.  Travillion repeatedly, and in conclusory fashion, attempts to allege that multiple defendants took some collective unconstitutional action.  For example, in paragraph 28 of his complaint, he alleges that "[o]n or between September 21-24, 2021[,] Defendants Haldeman, C. Miller, Hoover, Makosy, Damico, Davis and Richard discarded [his] complaints of sexual harassment and assault[.]"[56]  This type of pleading is improper for a Section 1983 lawsuit because it does not plausibly allege that each Defendant took some action that violated Travillion's constitutional rights.  There is simply no way to tell what each defendant allegedly did or when they did it, and thus there is no way to determine whether Travillion has stated a Section 1983 claim against one, several, or none of the Defendants.

---

[56] Doc. 1 ¶ 28.

The Court additionally admonishes Travillion that it will not countenance conclusory, "kitchen-sink" pleading that attempts to raise every claim against every defendant by copying and pasting stock language into each paragraph. Such unadorned legal conclusions are not entitled to the assumption of truth and do not plausibly state constitutional violations. They also create significant confusion regarding what claim is being asserted against what defendant, as well as the purported basis for the claim. Instead, Travillion should plead his claims individually and should include only those claims for which he can plausibly allege, pursuant to Federal Rule of Civil Procedure 11, that his "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."[57] And he must do so without conflating his First and Eighth Amendment allegations. Failure to comply with these specific directives will result in the Court striking the amended pleading.

If Travillion chooses not to file an amended complaint, this case will proceed on a single claim: First Amendment retaliation against defendant Sharon Clark.

---

[57] FED. R. CIV. P. 11(b)(3).

## III. CONCLUSION

Based on the foregoing, the Court will dismiss in part Travillion's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. Travillion, if he is able, may file an amended complaint in accordance with this Memorandum. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge